# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| | : | |
| **v.** | : | **No. 05-CR-613** |
| | : | |
| **DEBORAH MORRIS,** | : | **No. 08-CV-3233** |
| **Defendant** | : | |

## MEMORANDUM OPINION

**Stengel, J.**                                                                 **November 22, 2010**

On December 7, 2006, following a jury trial, Deborah Morris was convicted of

health care fraud, mail fraud, and making a false statement in a health care proceeding.

She has filed a pro se petition for relief pursuant to 28 U.S.C. § 2255. For the reasons set

forth below, I will deny the petition.

I.    <u>Procedural History</u>

On October 25, 2005, a grand jury in the United States District Court for the

Eastern District of Pennsylvania returned an indictment charging Deborah Morris with 34

counts of health care fraud, in violation of 18 U.S.C. § 1347, 14 counts of mail fraud, in

violation of 18 U.S.C. § 1341, and one count of making a false statement in a health care

proceeding, in violation of 18 U.S.C. § 1035. Trial commenced on November 27, 2006,

and, on December 7, 2006, the jury found Ms. Morris guilty on all charges.

On October 23, 2007, Ms. Morris was sentenced to a term of 60 months

imprisonment and a term of three years supervised release. Ms. Morris was ordered to pay restitution to Medicare in the amount of $278,507.05 and a special assessment of $4,900.00. The court entered judgment on November 6, 2007. Ms. Morris timely appealed, alleging there was insufficient evidence for the jury to return a guilty verdict for healthcare fraud and there was insufficient evidence to support the allegations in the indictment and the requirements of the mail fraud statute. <u>See</u> Brief for Appellant Deborah Morris at 3, <u>United States v. Morris</u>, 07-4528 (3d Cir. filed June 8, 2009). On April 16, 2010, the United States Court of Appeals for the Third Circuit affirmed her conviction and sentence.

On July 9, 2008, Ms. Morris filed a pro se petition for relief under 28 U.S.C. § 2255. On July 22, 2008, the Court ordered Ms. Morris to complete the standard § 2255 form within 45 days. Ms. Morris filed the form and a memorandum in support of her petition on October 7, 2008. On February 27, 2009, Ms. Morris's petition was denied because her direct appeal was pending.

On May 17, 2010, after the Third Circuit affirmed her conviction and sentence, Ms. Morris filed a motion for the Court to hear the § 2255 motion that previously had been denied. On May 25, 2010, the Court granted Ms. Morris's motion and ordered the Government to file a response.

Ms. Morris's § 2255 petition alleges: (1) counsel ineffectiveness for failing to conduct an adequate investigation; (2) counsel ineffectiveness for failing to review

discovery materials with Ms. Morris; (3) counsel ineffectiveness for failing to present evidence in Ms. Morris's defense at trial; (4) counsel ineffectiveness for failing to know other civil remedies could be used to address the charges against Ms. Morris; (5) counsel ineffectiveness for failing to show Ms. Morris a witness list before trial; (6) counsel ineffectiveness for failing to challenge the credibility of witnesses and their testimony; (7) counsel ineffectiveness for stipulating to incorrect information and refusing to correct errors pertaining to the stipulation; (8) counsel ineffectiveness because the attorney who gave the closing argument was not the attorney who tried the remainder of her case; (9) counsel ineffectiveness for failing to allow her to testify at trial; (10) a Due Process violation concerning jury selection; and (11) the Government knowingly presented perjured testimony. See Memorandum in Support of Habeas Corpus Motion Under 28 U.S.C. § 2255, United States v. Morris, No. 05-cr-613-1, No. 08-cv-3233 (E.D. Pa. filed Oct. 7, 2008) [hereinafter Petitioner's Memorandum].

II.  Facts

Ms. Morris founded D.N. Morris and Associates, a business which provided social work services to children. D.N. Morris and Associates used independent contractors, including psychiatrists, psychologists, and behavioral consultants, to provide the services.

In 1997 Ms. Morris obtained a Medicare provider number as an individual and for her business. Medicare is the federal health insurance program for the elderly, the blind,

and the disabled.  Ms. Morris's application for a provider number contained a false Social Security number and a false statement that she graduated from the University of Pennsylvania.  Ms. Morris submitted a falsified social worker license, altering another person's social worker license to show Ms. Morris's name.

Ms. Morris submitted 5,021 claims for services which allegedly were provided to 59 Medicare beneficiaries from January 1, 1997 through December 31, 2002.  The claims totaled $964,454.17, of which Medicare paid $278,507.05.  The claims certified that D.N. Morris and Associates provided psychotherapy services to the 59 beneficiaries.  The services, however, were never provided.  Several of the supposed beneficiaries testified at trial that they did not receive psychotherapy services from D.N. Morris and Associates or from anyone who worked for D.N. Morris and Associates.  Three of the beneficiaries were deceased at the time D.N. Morris and Associates allegedly provided services to them, another three were in the hospital.

In June 2002, a hearing officer for Medicare held an enrollment hearing by telephone with Ms. Morris and her daughter Davonne Roye.  The Medicare carrier had revoked the provider numbers for Ms. Morris and D.N. Morris and Associates.  Ms. Morris had appealed the revocations.  The telephone conversation was recorded and was played at the trial.  The hearing officer affirmed the revocation of Ms. Morris's number, finding Ms. Morris was not a licensed clinical worker.  He also affirmed the revocation of D.N. Morris and Associates' number because the group was based on Ms. Morris and Dr.

Kimberly Walker, and only Dr. Walker was an eligible provider.

III.    Discussion

A prisoner in custody may move the sentencing Court "to vacate, set aside, or correct" a sentence imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. Section 2255 "permits relief for an error of law or fact only where the error constitutes a 'fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Eakman, 378 F.3d 294, 298 (3d Cir. 2004) (quoting United States v. Addonizio, 442 U.S. 178, 185 (1979)).

A.    Counsel Ineffectiveness Claims

To establish a claim of ineffective assistance of counsel, a petitioner must show (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984); accord Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (noting ineffectiveness claims are "governed by the familiar two-prong test set forth in Strickland[]" (quoting Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir.2006)). To prove counsel's performance was deficient, petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "The proper measure of attorney performance remains simply reasonableness under prevailing

professional norms." <u>Rainey</u>, 603 F.3d at 197 (quoting <u>Strickland</u>, 466 U.S. at 687).   To

establish prejudice, the petitioner must show "counsel's errors were so serious as to

deprive the defendant of a fair trial." <u>Strickland</u>, 466 U.S. at 486.   "The defendant must

show that there is a reasonable probability that, but for counsel's unprofessional errors,

the result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." <u>Rainey</u>, 603 F.3d at 197

(quoting <u>Strickland</u>, 466 U.S. at 689).


     1.    <u>Investigation</u>

Ms. Morris claims her counsel was ineffective for failing to conduct an adequate

investigation.  She alleges counsel failed to thoroughly investigate the accuracy of the

allegations and failed to conduct a comprehensive interview of Ms. Morris.  <u>See</u>

Petitioner's Memorandum at 13.

Ms. Morris fails to specify what evidence her counsel failed to investigate, and

what information counsel would have uncovered had a more thorough investigation

occurred.  She attached documents to her petition, filed documents as an addendum, and

filed additional documents with two motions to "adjoin" documents.[1]  The attached

_____

[1] On June 14, 2010, Ms. Morris's motion to "adjoin" enclosed comparative analysis of
systematic implementation of guidelines – attachments I, II, and III to petition for rehearing 28
U.S.C. 2255 (2008) memorandum was denied as moot because her petition for rehearing already
had been granted.  Order, <u>United States v. Morris</u>, No. 05-cr-613-1, No. 08-cv-3233  (E.D. Pa.
filed June 15, 2010).  The Clerk of Court was ordered to file the documents attached to the
motion as a supplement to her petition and the documents were considered when ruling on this

documents contain, among other items, her applications for a medical provider number and the regulations governing Medicare. These documents do not establish her counsel did not conduct an investigation. Moreover, Ms. Morris cannot establish prejudice. The documents do not undermine the jury's verdict and Ms. Morris fails to establish the outcome of her trial would have been different if the documents had been entered into evidence. Ms. Morris's ineffectiveness claim for failing to investigate is meritless.

### 2. Review of Discovery Materials

Ms. Morris alleges her counsel failed to review discovery materials with her. Petitioner's Memorandum at 13. Her petition is vague and conclusory, and it fails to specify which documents her counsel did not review with her.

This was a case marked by the use of many documents. Much of the trial involved testimony necessary to authenticate the large number of documents. The Government provided defense counsel with copies of all trial documents long before trial and there

petition.

Subsequently, Ms. Morris filed two motions to adjoin attachments to her motion to set aside her conviction and sentence. See Petitioner's Pro Se Motion to Adjoin Factual Evident Attachments to Set Aside My Conviction and Sentence, United States v. Morris, No. 05-cr-613-1, No. 08-cv-3233 (E.D. Pa. filed Sept. 7, 2010); Motion to Adjoin Exhibit/Evidence and Facts to Set Aside Convictions of Health Care Fraud, Mail Fraud, and False Statement, United States v. Morris, No. 05-613 (E.D. Pa. filed Oct. 4, 2010). The documents attached are regulations governing the Social Security Act and a chart apparently prepared by Ms. Morris depicting her view of the Medicare system. On November 10, 2010, Ms. Morris's motions to adjoin documents were granted, and the documents have been considered in addressing Ms. Morris's petition.

was no assertion that the Government failed to produce documents in discovery. At trial, counsel seemed to be well-prepared and cross-examined witnesses effectively. It is inconceivable to this court that defense counsel failed to review material documents obtained during discovery with Ms. Morris. Many of the documents supported the proof of fraud by Ms. Morris and counsel demonstrated a high level of understanding of the factual and legal issues in this case. Further, Ms. Morris does not even suggest, let alone prove, that this "failure" by her attorneys to review discovery documents with her undermined the truth-determining process at all. This claim is meritless.

### 3. Failure to Present Evidence in Her Defense

Ms. Morris alleges her counsel failed to present mitigating evidence at trial and states she would have presented Medicare experts, coding experts, Medicare computer billing experts, and other experts to establish systematic problems with Medicare. See Petitioner's Memorandum at 13. Ms. Morris fails to identify even one expert who would have testified at trial or to explain what that expert's testimony would have established. She fails to establish that expert testimony would have altered the outcome of the trial, and, therefore, cannot prove prejudice.

It was abundantly clear that Ms. Morris misrepresented her qualifications and that she submitted false and fraudulent claims to Medicare for services she never performed and was never qualified to perform. What expert would have justified that to the jury?

Her bogus claim that her attorneys were ineffective for failing to involve experts for her defense is no basis for relief. There certainly is no showing that this failure to call defense experts in any way undermined the truth-determining process. This claim is meritless.

### 4.    Other Remedies for Medicare Billing Disputes

Ms. Morris claims the Government should have attempted to use other remedies to settle the Medicare billing disputes. See Petitioner's Memorandum at 14. She claims her counsel was ineffective for not realizing the Government should have pursued other remedies. Id. at 13.

Ms. Morris was found guilty of health care fraud, mail fraud, and making a false statement in a health care proceeding. The charges and convictions did not result from mere Medicare billing disputes. In addition, the grand jury, not her attorney, indicted Ms. Morris. This claim is meritless.

### 5.    Witness List

Ms. Morris claims her attorney did not show her a witness list before trial, and that she did not know Donna Morton would be a witness at trial until Ms. Morris saw Ms. Morton in court. See Petitioner's Memorandum at 13. During the jury selection process, the Court read the names of the potential government witnesses, including Ms. Morton's

name.  In addition, even if Ms. Morris did not know Ms. Morton was going to testify, Ms.

Morris cannot establish prejudice as a result of the lack of knowledge.


### 6.    Challenge the Credibility of Witnesses

Ms. Morris alleges her counsel failed to challenge the credibility of the witnesses

and the accuracy of their testimony.  See Petitioner's Memorandum at 13.  Ms. Morris

argues Dr. Kenneth Levy testified he had not met Ms. Morris, but records indicated Dr.

Levy and Ms. Morris had signed off on the same treatment plan for at least six patients.

Id. at 16.  Ms. Morris also argues her attorney failed to challenge Rosalyn Williams's

knowledge of the services provided by D.N. Morris and Associates.  Id.

In her closing, Ms. Morris's attorney challenged Dr. Levy's testimony stating:

> Dr. Levy, he said he didn't even know Deborah Morris, but then the records
> custodian came in from Tenet Parkview, remember, and there were six patients
> where Dr. Levy and Dr. Morris had signed off on the same treatment plan,
> both seeing the same patient, same treatment group.  So he must have met her,
> had to know her.

Trial Transcript, Dec. 6, 2007, at 119-20.  Ms. Morris's counsel also challenged the

credibility of other witnesses, including Dr. Gisele Johnson.  In the closing, her counsel

noted Dr. Johnson had a grant of immunity and argued "[y]ou don't get immunity unless

you have something you might have to worry about."  Id. at 118.   Counsel also stated Dr.

Johnson had not "always told a consistent story," highlighting alleged inconsistencies

between Dr. Johnson's trial testimony and her grand jury testimony.  Id. at 119.

Ms. Morris also argues her counsel failed to challenge Ms. Williams's testimony regarding Ms. Williams's knowledge of the services provided by D.N. Morris and Associates. She argues Ms. Williams was a landlord who rented space to the business, Ms. Williams was not employed by the business from the time the business was opened, as the testimony allegedly suggests, and Ms. Williams was not aware of all services the company offered its clients. During direct examination, Ms. Williams testified "[D.N. Morris and Associates] rented office space from me." Trial Transcript, Nov. 30, 2006, at 112. She stated she was employed by D.N. Morris and Associates only from October 1998 through March 1999. Id. at 113. Ms. Williams also testified her employment was limited to the office at 46 Maplewood Mall and she did not have contact with the office located at 5450 Wissahickon Avenue. Id. at 116. Ms. Williams admitted during direct examination all information Ms. Morris contends her counsel failed to gather during cross examination.

Because her attorney did challenge the credibility of witnesses, and because the information Ms. Morris alleges counsel failed to elicit was presented at trial, counsel cannot be found ineffective. Ms. Morris's counsel ineffectiveness claim for failing to challenge the credibility of the witnesses is meritless.


7.      Stipulations

Ms. Morris alleges her counsel stipulated to incorrect information and refused to

correct the false stipulations.  <u>See</u> Petitioner's Memorandum at 13.  She states her counsel stipulated to deposition testimony which stated the witnesses did not receive services.  <u>Id.</u> at 16.  She alleges her counsel should have asked the witnesses whether they received services from the name of the worker, rather than from the name of the business.  <u>Id.</u>

Ms. Morris does not explain why the stipulations were incorrect, and does not explain what prejudice resulted from the stipulations.[2]

### 8.    Different Counsel Delivered the Closing Argument

Ms. Morris contends her counsel was ineffective because attorney Dina Chavar delivered the closing argument, not attorney Luis Ortiz.  <u>See</u> Petitioner's Memorandum at 13.  Mr. Ortiz delivered the opening statement and cross-examined the witnesses.  Ms. Morris alleges she had not met Ms. Chavar, and did not know Ms. Chavar would deliver the closing argument.  <u>Id.</u>  In addition, she alleges the closing argument stated Ms. Morris told people she went to the University of Pennsylvania and was a licensed social worker,

---

[2] Ms. Morris also appears to allege the stipulations and the Government's failure to present all witnesses who previously testified that they did not receive services from D.N. Morris and Associates violated her right to confront her accusers.

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  In <u>Crawford v. Washington</u>, 541 U.S. 36, 53-54 (2004), the United States Supreme Court barred "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant has had a prior opportunity for cross-examination."

Here, it appears Ms. Morris may be referring to video depositions which were played for the jury.  The video depositions were shown to the jury because the witnesses were unavailable and had testified at a deposition, where they were cross-examined.  Trial Transcript, Dec. 5, 2006, at 102-115.

even though Ms. Morris had not testified at trial or spoken with Ms. Chavar.  Id.

During his opening statement, Mr. Ortiz stated Ms. Chavar would present the closing argument.  See Trial Transcript, Nov. 28, 2006, at 37.  In addition, Ms. Chavar was in the courtroom from the start of Ms. Morris's trial.  Ms. Chavar's closing refers to evidence presented at trial that Ms. Morris had claimed she attended the University of Pennsylvania and was a licensed social worker.  The closing did not refer to any statement Ms. Morris made at trial or to any statement Ms. Morris made to Ms. Chavar.  Trial Transcript, Dec. 6, at 113-14.  Moreover, Ms. Morris fails to establish prejudice resulting from the closing argument.


9.      The Right to Testify at Trial

Ms. Morris alleges counsel failed to allow her to testify at trial.[3]  See Petitioner's Memorandum at 13.  In Palmer v. Hendricks, 592 F.3d 386, 399 (3d Cir. 2010), the United States Court of Appeals for the Third Circuit, found a petitioner had to prove prejudice on his counsel ineffectiveness claim for failing to advise petitioner of his right to testify at trial.  Ms. Morris fails to establish prejudice.  She does not allege she would have testified at the trial or indicate how she would have testified.  Ms. Morris fails to show the outcome of the trial would have been different had she testified.

---

[3]   A defendant's right to testify is protected by 18 U.S.C. § 3481, which states, "[i]n trial of all persons charged with the commission of offenses against the United States and in all proceedings in courts martial and courts of inquiry in any State, District, Possession or Territory, the person charged shall, at his own request, be a competent witness."

B.    Jury Selection

Ms. Morris alleges her Due Process rights were violated during jury selection because her jury had only one African American person.  See Petitioner's Memorandum at 14.  In addition, she argues her rights were violated because no one on the jury was a mental health or substance abuse provider, male, or a community activist or advocate.

1.    Procedural Default

Ordinarily "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 503 (2003); accord Hodge v. United States, 554 F.3d 372, 379 (3d Cir. 2009) ("movant has procedurally defaulted all claims that he neglected to raise on direct appeal").[4]  A petitioner's procedural default will be excused if she establishes "either that [she] is actually innocent of the crime for which [she] was convicted, or that there is a valid cause for the default, as well as prejudice resulting from the default." Hodge, 554 F.3d at 379 (citing Bousley v. United States, 523 U.S. 614, 622 (1998)).  To establish cause, the petitioner must show "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." United States v. Pelullo, 399 F.3d 197, 223 (3d Cir. 2005) (quoting McCleskey v. Zant, 499 U.S. 467, 493 (1991)).  To show prejudice, a petitioner must show the error "worked to [her] actual and substantial disadvantage,

_____

[4]  A petitioner can raise counsel ineffectiveness claims for the first time in a collateral attack.  Massaro, 538 U.S. at 504.

infecting [her] entire trial with error of constitutional dimensions." Murray v. Carrier, 477

U.S. 478, 494 (1986) (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). To

establish a miscarriage of justice, the petitioner must prove "a constitutional violation has

probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513

U.S. 298, 327 (1995) (Carrier, 477 U.S. at 496). A petitioner must support a claim of

miscarriage of justice "with new reliable evidence–whether it be exculpatory scientific

evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not

presented at trial." Id. at 325.

Ms. Morris's challenge to the jury selection process is procedurally defaulted

because she failed to raise the claim during her direct appeal.[5] The procedural default is

not excused. Ms. Morris has failed to establish she is actually innocent of the crimes, and

has not established cause and prejudice for her procedural default.


2.    Meritless

If Ms. Morris is attempting to argue counsel ineffectiveness for failing to

challenge the selection of the jury, the claim fails because the jury selection claim is

meritless. In Batson v. Kentucky, 476 U.S. 79 (1986), the United States Supreme Court

found a defendant's Due Process rights are violated if the prosecution challenges

---

[5] On direct appeal, Ms. Morris raised two claims: (1) whether there was sufficient
evidence for the jury to return a guilty verdict for healthcare fraud; and (2) whether the
Government failed to provide sufficient evidence to support the allegations in the indictment and
the requirements of the mail fraud statute. See Brief for Appellant Deborah Morris at 3.

potential jurors based solely on the juror's race. To establish a <u>Batson</u> claim, a petitioner

must make a prima facie showing by "demonstrating a pattern of peremptory challenges

of jurors of a particular race." <u>United States v. Milan</u>, 304 F.3d 273, 281 (3d Cir. 2002).

If a prima facie case is presented, the Government must offer a racially neutral

explanation for the strikes. <u>Id.</u> The burden then returns to the petitioner, who must

establish the Government's explanation is pretextual. <u>Id.</u> Ms. Morris fails to establish a

prima facie case because she presents no evidence "demonstrating a pattern of

peremptory challenges of jurors of a particular race." Ms. Morris merely alleges there

were many African Americans on the jury panel, but only one African American on the

jury.[6]

Because Ms. Morris's <u>Batson</u> claim is meritless, counsel cannot be ineffective for

failing to raise the claim. <u>See</u> <u>United States v. Sanders</u>, 165 F.3d 248, 253 (3d Cir. 1999)

("There can be no Sixth Amendment deprivation of effective counsel based on an

attorney's failure to raise a meritless argument.").[7]

---

[6] A failure to have mental health or substance abuse providers, males, or community
activists or advocates on the jury does not state a federal claim.

[7] In addition, Ms. Morris argues a mistrial was warranted because a juror failed to appear
on the last day of trial. <u>See</u> Petitioner's Memorandum at 14. On December 6, 2007, one of four
alternate jurors failed to return following a lunch recess. The trial proceeded without the
alternate juror.
      This claim is procedurally defaulted because Ms. Morris failed to object to the juror's
dismissal at trial and failed to raise the claim on appeal. Moreover, the claim lacks merit because
the dismissal of one of four alternate jurors did not deprive Ms. Morris of a jury of her peers and
did not result in prejudice to Ms. Morris.

C.    Prosecutorial Misconduct

Ms. Morris's claim that the Government knowingly presented perjured testimony is procedurally defaulted because she failed to raise it on direct appeal. This procedural default is not excused because Ms. Morris has not established actual innocence, and has not established cause and prejudice for the default.

Moreover, her claim lacks merit. A petitioner's rights are violated where her conviction is based on testimony the prosecution knows is perjured and that prejudices the defendant. Giglio v. Untied States, 405 U.S. 150, 154 (1972). Ms. Morris makes broad accusations that witnesses lied. She states Ms. Morton perjured herself by, among other statements, stating the handwriting on various documents was Ms. Morris's handwriting. Ms. Morris, however, does not present any evidence that Ms. Morton, or any other witness, testified falsely. She fails to establish anyone committed perjury, let alone that the prosecutor knew of any false statement. Ms. Morris's claim the Government knowingly presented false testimony is meritless.[8]

---

[8] Ms. Morris also appears to allege prosecutorial misconduct because her daughter, Ms. Morton, testified when Ms. Morton's counsel was not present. At the trial a hearing was conducted on this issue. It was determined Ms. Morton was not a target of an investigation and was not in danger of being prosecuted. In addition, the investigator checked with Ms. Morton prior to her testimony to ensure she was ready to testify, and Ms. Morton said she had to do what she had to do and wanted to get it over with. Ms. Morton also testified that she stated "I guess I have to do what I have to do."

Contrary to Ms. Morris's allegations, Ms. Morton's counsel was not at a separate trial. She was aware Ms. Morris's trial was occurring and that Ms. Morton was expected to testify on that day.

D.    <u>Withholding Evidence and Witness Tampering</u>

"[T]he suppression by the prosecution of evidence favorable to an accused . . .

violates due process where the evidence is material either to guilt or to punishment,

irrespective of the good faith or bad faith of the prosecution."  <u>Riley v. Taylor</u>, 277 F.3d

261, 300 (3d Cir. 2001) (quoting <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963)).  To state a

<u>Brady</u> claim, the "plaintiff must show that the evidence was (1) suppressed, (2) favorable,

and (3) material to the defense."  <u>Id.</u>

Ms. Morris alleges the Government withheld documents showing Dr. Walker

agreed to be a Medicare provider for Ms. Morris's group.  Ms. Morris, however, does not

specify what document the Government withheld.  At trial it was established that Dr.

Walker authorized Ms. Morris to apply for Medicare on Dr. Walker's behalf.  Dr. Walker

testified that she agreed to be a Medicare provider in Ms. Morris's group.  Trial

Transcript, Nov. 29, at 155.   Defense counsel also produced an email during his cross-

examination of Dr. Walker in which Dr. Walker gave permission to Ms. Morris to apply

for Medicare on her behalf.  <u>Id.</u> at 164-65.  Ms. Morris's <u>Brady</u> claim is meritless because

she fails to establish the prosecution suppressed any evidence, let alone evidence that was

favorable and material to the defense.

Ms. Morris also references a witness who allegedly identified a person in a

photograph by the wrong name as evidence of "witness tampering."  She alleges, because

the person mis-identified the photograph, and because the witness pronounced the person

she believed the photograph to be (DaVonne Roye) correctly, the Government had to have fed the witness the information. These conclusory statements cannot form the basis of a witness tampering violation.

Ms. Morris's <u>Brady</u> claim and her claim of witness tampering are meritless.


III.    <u>Evidentiary Hearing</u>

"In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'"  <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005) (quoting <u>Government of the Virgin Islands v. Forte</u>, 865 F.2d 59, 62 (3d Cir. 1989)).  An evidentiary hearing is required "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief."  <u>Id.</u> (quoting <u>Forte</u>, 865 F.2d at 62).

Accepting Ms. Morris's allegations as true, and considering Ms. Morris's motion and the files and records of the case, Ms. Morris is not entitled to relief.  Therefore, I find an evidentiary hearing is not required.


IV.    <u>Certificate of Appealability</u>

"Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . .  (B) the final order in a proceeding under section 2255."  28 U.S.C. § 2253.   "A certificate of appealability may issue under

paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

Pursuant to Local Rule 22.2, the District Court must determine whether a certificate of appealability should issue. Rule 22.2 provides:

> At the time a final order denying a petition under 28 U.S.C. § 2254 or § 2255 is issued, the district judge will make a determination as to whether a certificate of appealability should issue. If the district judge issues a certificate, the judge must state the specific issue or issues that satisfy the criteria of 28 U.S.C. § 2253. If an order denying a petition under § 2254 or § 2255 is accompanied by an opinion or a magistrate judge's report, it is sufficient if the order denying the certificate references the opinion or report. If the district judge has not made a determination as to whether to issue a certificate of appealability by the time of the docketing of the appeal, the clerk will enter an order remanding the case to the district court for a prompt determination as to whether a certificate should issue.

When the petitioner's constitutional claims have been rejected on the merits, to establish the "substantial showing" required for issuance of a certificate of appealability, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). If a petitioner's claim has been rejected due to procedural default, the petitioner must "show[], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

I find no certificate of appealability should issue because reasonable jurists would

not debate that Ms. Morris's constitutional claims lacked merit, and reasonable jurists would not debate that her due process and prosecutorial misconduct claims are procedurally defaulted.

IV.     <u>Conclusion</u>

Ms. Morris's pro se petition for relief pursuant to 28 U.S.C. § 2255 will be dismissed and there is no basis for the issuance of a certificate of appealability.

An appropriate order follows.